REQUESTED BY: Harold W. Clarke, Director, Nebraska Department of Correctional Services
You have asked for an opinion regarding the Department's procedures concerning involuntary medication hearings involving mentally ill inmates. Your specific questions were:
 1) What is the nature of the Fourteenth Amendment due process interest of an inmate in not being medicated involuntarily?
 2) What procedural mechanism does the Department need to follow before entering an order to allow involuntary medication?
 a) Does the hearing officer need medical/psychiatric training?
 b) What must be established in order to enter such an order?
 c) What responsibility does the Department have to ensure that the inmate's interests are represented?
 i) Is the responsibility different if the inmate is not able to respond or understand that a hearing is being held?
d) Is an administrative appeal required?
All of your questions are addressed below.
Question I: What is the nature of the Fourteenth Amendment due process interest of an inmate in not being medicated involuntarily?
In Washington v. Harper, 494 U.S. 210 (1990), the Supreme Court held that inmates possess "a significant liberty interest in avoiding the unwanted administration of antipsychotic drugs under the Due Process Clause of the Fourteenth Amendment."494 U.S. 221-222. The right to be free of medication must be balanced, however, against the state's duty to treat mentally ill inmates and run a safe prison. United States v. Watson,893 F.2d 970, 977-78 (8th Cir.), cert. denied, 497 U.S. 1006 (1990); Ashbyv. Schneck, 61 F.3d 908 (8th Cir. 1995). Therefore, the Due Process Clause permits the state to treat a prison inmate who has a serious mental illness with antipsychotic drugs against his will, if the inmate is dangerous to himself or others and the treatment is in the inmate's medical interest. Harper,494 U.S. at 227.
In Harper, an inmate challenged his involuntary treatment with psychotropic drugs over a period of some three and one-half years while incarcerated at Washington's Special Offender Center. The Court addressed the questions of whether inmates have a liberty interest in avoiding the administration of antipsychotic drugs against their will and, if so, whether the state of Washington's comprehensive procedures governing the ongoing involuntary administration of such drugs comported with the requirements of due process. As to the first of these issues, the Court held that an inmate does have a constitutionally protected liberty interest in avoiding the involuntary administration of antipsychotic drugs (in addition to any state-created liberty interests), Id. at 221-22, 110 S.Ct. at 1036-37, but that a state may nonetheless involuntarily treat an inmate who has a serious mental illness with antipsychotic drugs if that inmate is a danger to himself or to others and the treatment is in the inmate's medical interest, Id. at 227, 110 S.Ct. at 1039-40;see also Riggins v. Nevada, 504 U.S. 127, 134-35, 112 S.Ct. 1810,1814-15, 118 L.Ed.2d 479 (1992).
The Court held as to the second issue that the particular array of Washington's procedures governing the administration of antipsychotic drugs on a continuing basis satisfied the requirements of the Due Process Clause of the Fourteenth Amendment. Harper, 494 U.S. at 228, 110 S.Ct. at 1040. Four procedural protections were clearly established by Harper as the constitutional minima for satisfying procedural due process when a state involuntarily administers antipsychotic medication to a prisoner. Those four procedural requirements are: a) notice; b) the right to be present at an adversary hearing; c) the right to present evidence and cross examine witnesses; and d) the right to an independent decision maker. Doby v. Hickerson, 120 F.3d 111
(8th Cir. 1997).
The Court in Harper did not have before it, and it did not address, what process might be required before state prison authorities may administer an antipsychotic drug in an emergency circumstance, as opposed to regularly in the course of ongoing, long-term treatment.
Question II: What procedural mechanism does the Department need to follow before entering an order to allow involuntary medication?
Before the procedural aspects of Harper are applicable, the Nebraska Department of Correctional Services (DCS) would first have to satisfy the substantive prong of Harper, which requires that a treating psychiatrist has determined that the inmate suffers from a serious mental illness, that he is dangerous to himself or others, and that medication is needed for his medical treatment.
After that determination is made the four procedural protections set forth by the Court in Harper must be satisfied when a state seeks to involuntarily administer antipsychotic medication to a prisoner. Doby v. Hickerson, 120 F.3d 111 (8th Cir. 1997).
A. Notice
As set forth by the United States Supreme Court in Harper, the notice requirement entails the following:
• Notice of the hearing 24 hours in advance;
 • the inmate is medication free for the 24 hours preceding the hearing;
 • the notice includes the tentative diagnosis, a factual basis for the diagnosis, and why staff believe medication is necessary.
B. Right to Attend the Hearing
The inmate has the right to attend the hearing, and to the assistance of a lay advisor who understands the psychological issues involved. This lay advisor cannot be involved with the inmate's treatment. Harper v. Washington.
C. Present Evidence/Cross-Examine
Harper also holds that the inmate has the right to present evidence on his behalf and to cross-examine the witnesses.
D. Independent Decision Maker
Harper sets forth a constitutional right to an independent decision maker. This means that no decision maker may be involved at the time of the hearing in the inmate's treatment or diagnosis. Members are not disqualified from sitting on the committee, however, if they have treated or diagnosed the inmate in the past. Harper, 110 S.Ct. at 1040.
 1. Does the hearing officer need medical/psychiatric training?
The United States Supreme Court in Harper is less than clear on this issue. Based on the following passages from Harper, it is quite clear that the Court favors the practice of having someone knowledgeable on psychiatric issues involved in the decision to involuntarily medicate a prisoner with antipsychotic medication.
 . . . The Policy under review requires the State to establish, by a medical finding, that a mental disorder exists which is likely to cause harm if not treated. Moreover, the fact that the medication must first be prescribed by a psychiatrist, and then approved by a reviewing psychiatrist, ensures that the treatment in question will be ordered only if it is in the prisoner's medical interests, given the legitimate needs of his institutional confinement. These standards, which recognize both the prisoner's medical interests and the State's interests, meet the demands of the Due Process Clause.
110 S.Ct. at 1037.
 Notwithstanding the risks that are involved, we conclude that an inmate's interests are adequately protected, and perhaps better served, by allowing the decision to medicate to be made by medical professionals rather than a judge. The Due Process Clause "has never been thought to require that the neutral and detached trier of fact be law trained or a judicial or administrative officer." Parham, 442 U.S. at 607, 99 S.Ct. at 2506-07. Though it cannot be doubted that the decision to medicate has societal and legal implications, the Constitution does not prohibit the State from permitting medical personnel to make the decision under fair procedural mechanisms . . . .
110 S.Ct. at 1042.
 "Although we acknowledge the fallibility of medical and psychiatric diagnosis, see O'Connor v. Donaldson, 422 U.S. 563, 584 [95 S.Ct. 2486, 2498, 45 L.Ed.2d 396] (1975) (concurring opinion), we do not accept the notion that the shortcomings of specialists can always be avoided by shifting the decision from a trained specialist using the traditional tools of medical science to an untrained judge or administrative hearing officer after a judicial-type hearing. Even after a hearing, the nonspecialist decisionmaker must make a medical-psychiatric decision. Common human experience and scholarly opinions suggest that the supposed protections of an adversary proceeding to determine the appropriateness of medical decisions for the commitment and treatment of mental and emotional illness may well be more illusory than real." (Citation omitted).
110 S.Ct. at 1042.
 . . . The risks associated with antipsychotic drugs are for the most part medical ones, best assessed by medical professionals. A State may conclude with good reason that a judicial hearing will not be as effective, as continuous, or as probing as administrative review using medical decisionmakers. We hold that due process requires no more.
110 S.Ct. at 1042-42.
Keeping these passages in mind, it is our opinion that while the Court favors the practice, the Constitution does not require that the hearing officer be a medical practitioner or a psychiatrist.
2. What must be established in order to enter such an order?
In order to involuntarily administer antipsychotic medication, the evidence presented at the hearing must establish that:
• the inmate suffers from a serious mental illness;
• the inmate is dangerous to himself or others; and
 • that treatment with antipsychotic medication is in his medical interest given the legitimate needs of his institutional confinement.
Washington v. Harper, 494 U.S. 210, 227 (1990); Walton v. Norris59 F.3d 67 (8th Cir. 1995).
 3. What responsibility does the Department have to ensure that the inmate's interests are represented?
As set forth above, in response to question 2, the inmate has the right to attend the hearing, with the assistance of a lay advisor who understands the psychological issues involved. This lay advisor cannot be involved with the inmate's treatment.
 a) Is the responsibility different if the inmate is not able to respond or understand that a hearing is being held?
No. We have found no case law that gives guidance on this issue. If DCS complies with Harper regarding a lay advisor, this should be legally sufficient.
4. Is an administrative appeal required?
Yes. Under the policy reviewed by the Court in Harper, the following procedures were also approved by the Court:
• minutes kept of the hearing and given to the inmate;
 • right to appeal and to have the appeal addressed by DCS staff (superintendent) within 24 hours;
• judicial review; and
 • periodic review of the involuntary medication decision.
 CONCLUSION
We hope this opinion addresses all of the issues raised in your request. If you have any further questions, please feel free to contact our office.
Sincerely yours,
 DON STENBERG Attorney General
 Terri M. Weeks Assistant Attorney General
APPROVED:
Don Stenberg
Attorney General